# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ARTHUR KIRBY, # N-54069        )
                                        )
             **Plaintiff,**         )
                                        )
     **vs.**                       )       **Case No. 15-cv-384-SMY**
                                        )
**CANTINA FOOD SERVICES,**    )
**THOMAS A. SPILLER,**        )
**SUZANN BAILEY,**            )
**TY BATES,**                    )
**UNKNOWN PARTY EYE DOCTOR,** )
**WEXFORD MEDICAL SOURCES,**   )
**ILLINOIS DEPT. of CORRECTIONS,** )
**and PINCKNEYVILLE CORRECTIONAL** )
**CENTER,**                      )
                                        )
           **Defendants.**      )

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He also invokes the Americans with Disabilities Act in connection with his claim. Plaintiff suffers from Type I diabetes. He claims that the two-meal-per-day policy and the high soy content of the food served at Pinckneyville have deprived him of adequate nutrition and harmed his health. Additionally, he states that the eye doctor intentionally gave him the wrong medication.

According to the complaint, Defendants Cantina Food Services (which provides food for the prison), Warden Spiller, Food Service Administrator Bailey, Deputy Corrections Director Bates, and Wexford Medical Sources (the prison medical provider) conspired to institute a policy denying breakfast to Pinckneyville inmates (Doc. 1, p. 6). Plaintiff asserts that the reasons for

this policy are related to Pinckneyville's status as a "disciplinary" prison.  Because of this policy, inmates must either wait 18 hours between meals, or must spend thousands of dollars to buy food at the prison commissary, which he claims overcharges for the items sold.  The policy forces inmates to be severely undernourished, and serves to "line the bank accounts/pockets of [the] co-conspirators" (Doc. 1, p. 6).

Specific to his individual situation, Plaintiff states that as a Type I diabetic, he has a medical need for three nourishing meals every day (Doc. 1, p. 7).  While he was in the custody of the Illinois Department of Corrections ("IDOC") from November 20, 2014, to January 16, 2015, he was served breakfast as well as two other meals each day (Doc. 1, p. 6).  However, since his January 16, 2015, transfer to Pinckneyville, he has not been given breakfast.  Instead, the two daily meals consist of a "brunch" and dinner.  Brunch is made up of a lunch, to which a small serving of oatmeal (4-5 spoonfuls) has been added.  The evening meal is "a small TV-dinner" (Doc. 1, p. 7).  He claims these two meals contain only 1600 calories, far too low for a highly active person such as Plaintiff.  The absence of breakfast and the many hours that he must go without food between dinner and the following day's brunch has caused problems for Plaintiff because of his diabetic condition.  He suffers from severe stomach pain, severe headaches, erratic weight changes, and dangerously low sugar counts.  He has also had a blackout. Furthermore, because of his diabetes, he should not eat white rice, potatoes, or pasta, but is often served these foods.

Plaintiff has repeatedly written letters to Defendants Bates, Bailey, and Spiller complaining about the diet plan and its effects on him.  He never received any response from these parties.  He has also filed grievances, which likewise have yielded no response.

Plaintiff's second claim focuses on the soy content of the prison diet.   Again, he

characterizes this claim as a "conspiracy" between Defendants Spiller, Bates, Bailey, the IDOC, and Cantina Food Services to feed him soy products which he contends are harmful.  As a result of consuming the soy foods, Plaintiff has experienced severe stomach pain, constipation, lethargy, headaches, erratic weight gains and losses, problems with urination, and depression. He also fears the soy diet has put him at risk for cancer (Doc. 1, pp. 7-8).  At one point in late 2014, he was unable to move his bowels for six full days, and his abdominal pain was so bad that he had to remain flat on his back in bed.  Plaintiff complained to Defendant Shah,[1] a medical provider, but obtained no treatment.  Defendant Shah refused to give Plaintiff a stool softener or anything for his pain, instead telling him to drink more water (Doc. 1, p. 8).  Plaintiff wrote several grievances over the soy content in the diet, but never got any response.

Finally, Plaintiff claims that the Unknown Defendant Eye Doctor treated him for a severe eye infection some time in 2014[2] by intentionally using ear drop medication instead of the proper eye drop medication (Doc. 1, pp. 9, 13).[3]  The Defendant Doctor placed the ear drops into Plaintiff's eyes, which caused painful burning.  At the time the Defendant Doctor gave Plaintiff the wrong medicine, Plaintiff told the doctor that he planned to file a grievance.  Plaintiff continued to use the drops in his eyes for some time as directed by the eye doctor, and noticed that the burning got worse.  Eventually, he was given the correct eye drop medication.  However, he claims he has suffered partial loss of vision and continuing eye pain from the improper use of the ear drops.

---

[1] Plaintiff did not include Defendant Shah in his case caption or among the listed Defendants (Doc. 1, pp. 1-3).  Because it appears that Plaintiff intended to bring a claim against Defendant Shah, however, the Clerk shall be directed to add him as a party.

[2] The unspecified date when this claim arose raises a question as to whether these events occurred at Pinckneyville or at Plaintiff's prior institutionl

[3] Plaintiff's "Exhibit A" (Doc. 1, p. 13) includes a copy of the medication label for the "Otic Solution" which clearly states, "USE IN EARS ONLY."  On the bottom of the same page, "Exhibit B" shows a different medication label for the eye drops which were given to Plaintiff on 2/28/15, including the notation "FOR OPHTHALMIC USE ONLY."

Plaintiff seeks monetary damages for the alleged violations of his constitutional rights.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts, which correspond to Plaintiff's designation of his claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Eighth Amendment claim against Defendants Cantina Food Services, Spiller, Bailey, Bates, and Wexford Medical Sources, for deliberate indifference to Plaintiff's need for adequate food to manage his diabetic condition, avoid painful symptoms, and to meet his nutritional needs;

> **Count 2:** Eighth Amendment claim against Defendants Shah, IDOC, Spiller, Bailey, Bates, and Cantina Food Services, for deliberate indifference to Plaintiff's serious physical symptoms caused by his adverse reaction to the soy content of the prison diet;

> **Count 3:** Eighth Amendment claim against the Unknown Defendant Eye Doctor, for intentionally treating Plaintiff with the wrong medication for his eye infection.

Counts 1 and 2 shall proceed for further review in this action against some of the named Defendants; other Defendants are subject to dismissal. Taking Plaintiff's allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), Count 3 also survives threshold review under § 1915A.

However, Count 3 involves a claim that has no connection to the claims in Counts 1 and 2, and does not implicate any of the Defendants named in those Counts. Therefore, Count 3 cannot proceed in the same action. In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the

Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b), (g)).

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Count 3 of Plaintiff's complaint, and shall open a new case with a newly-assigned case number for that claim.  However, Plaintiff shall have an opportunity to voluntarily dismiss the newly severed case if he does not wish to proceed on those claims or incur the additional filing fee.

## Count 1 – Deliberate Indifference to Nutritional Needs

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime.  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment.  *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

Claims under the Eight Amendment have both an objective and subjective component.  *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991).  The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs or deprived the inmate of the minimal civilized measure of life's necessities.   *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component of unconstitutional punishment focuses on the state of mind of

the defendant. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, this is deliberate indifference to inmate health or safety. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

In Plaintiff's case, his diabetes is an objectively serious medical condition, which must be managed in part by regular and nutritionally sufficient meals. The severe stomach pain, headaches, and episodes of low blood sugar Plaintiff experiences as a result of the two-meal plan indicate a deprivation of adequate nutrition that may implicate the Eighth Amendment.

Turning to the subjective component of his claim, Plaintiff wrote letters complaining about the meal policy and its effects on him as a diabetic to three individual Defendants: Deputy Director Bates, Food Service Administrator Bailey, and Warden Spiller. At this stage of the case, this is sufficient to indicate that these Defendants had knowledge of the harmful effects of the meal plan on Plaintiff, yet did nothing to address his suffering. Plaintiff may therefore proceed with his deliberate indifference claim in **Count 1** against Defendants Spiller, Bailey, and Bates.

However, the complaint fails to state a deliberate indifference claim upon which relief may be granted against the corporate Defendants, Cantina Food Services ("Cantina") or Wexford

Medical Sources ("Wexford").  A corporate entity will incur liability in a civil rights action only where it established a policy that directly caused the constitutional violation.  *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation).  In the context of § 1983, a private corporation that performs functions on behalf of the state is "acting under color of state law," and is treated the same as a municipal entity.  *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002).

In this case, Plaintiff does not claim that any individual defendant acted or failed to act as a result of an official policy espoused by either Cantina or Wexford.  Further, it is not plausible that the policy decision to start feeding Pinckneyville inmates only two meals per day was made by the company (Cantina) that was hired by the prison to provide food, or by the company (Wexford) that was hired to provide health care services to inmates.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (a claim of entitlement to relief must cross "the line between possibility and plausibility").  The tail does not wag the dog; if Defendant Cantina is providing food for two daily meals instead of three, it is doing so under its contractual obligations to the state officials in charge of the prison and its operations.  As for Wexford, Plaintiff fails to explain how this health care contractor has anything to do with the prison's meal plan.  Accordingly, the complaint does not state a deliberate indifference claim upon which relief may be granted against Defendants Cantina or Wexford in Count 1.

Furthermore, Plaintiff's allegation that the Defendants were part of a "conspiracy" to implement the two-meal policy at Pinckneyville in order to make money by forcing inmates to purchase commissary food, does not state a constitutional claim upon which relief may be granted.  Conspiracy is not an independent basis of liability in §1983 actions.  *See Smith v.*

*Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).  "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution."  *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).

According to Plaintiff, the purpose of the "conspiracy" is to force inmates to spend their money at the commissary to purchase food.  Depriving an inmate of his property (money) might implicate the constitutional right under the Fourteenth Amendment to be free from the taking of property by state actors without due process of law.  However, aside from the fact that Plaintiff has not claimed to have had any of his own money "taken" in this way, a Fourteenth Amendment due process claim must be based on a deprivation of property *without due process of law.*  If the state provides an adequate legal remedy, there is no cognizable civil rights claim.  *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).  The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims.  *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995).  Because this state remedy is available, Plaintiff cannot maintain a constitutional claim for any deprivation of his property/money as a result of the Pinckneyville meal plan.  And where there is no underlying constitutional claim for this "deprivation," there is likewise no viable civil rights claim for a "conspiracy" to deprive inmates of their funds.

Finally, Plaintiff's bare allegation that the meal policy is "in violation of the ADA" (Americans with Disabilities Act) does not state a claim under that statute.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132. "In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act,[4] a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). Whether or not Plaintiff might be considered a disabled individual because of his diabetes, the complaint fails to suggest that any action taken by a Defendant was connected in any way to a disability, let alone constituted discrimination on account of a disability. The complaint thus states no claim under the ADA or the Rehabilitation Act.

To summarize, **Count 1** shall proceed against Defendants Spiller, Bailey, and Bates only. Count 1 shall not include any claims based on conspiracy, the ADA, or the Rehabilitation Act. Defendants Cantina Food Services and Wexford Medical Sources are dismissed from this claim.

## Count 2 – Deliberate Indifference to Plaintiff's Adverse Reaction to Soy Foods

As noted in the discussion of Count 1, an Eighth Amendment deliberate indifference claim has both an objective and a subjective component. Plaintiff describes several objectively serious physical symptoms that he alleges have been caused by consuming soy products contained in the prison food, including severe stomach pain and constipation. The complaint thus satisfies the first part of a cruel and unusual punishment claim.

According to the complaint, Plaintiff only brought these problems to the attention of Defendant Shah, who refused to provide any treatment or take any steps to mitigate the risk to Plaintiff's health. At this stage, Plaintiff may proceed with his claim against Defendant Shah for deliberate indifference to the health problems that he attributes to the soy foods. Defendants

---

[4] A court should analyze a disability-related claim under both the ADA and the Rehabilitation Act. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667 (7th Cir. 2012).

Spiller, Bates, and Bailey are dismissed from this claim without prejudice, because Plaintiff does not state that he had any contact with these individuals to inform them of the soy-related health problems or to request them to take any steps to provide him with a soy-free diet.

The claim in Count 2 is also dismissed as to Defendant Cantina Food Services, for the same reasons discussed above in Count 1.

Plaintiff cannot maintain any claim for money damages against the Defendant Illinois Department of Corrections, because it is a state government agency.  The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment).

Plaintiff also lists the Pinckneyville Correctional Center as a distinct Defendant, although he does not associate Pinckneyville with any of his specific claims.  Because Pinckneyville is a division of the Illinois Department of Corrections, it likewise is not a "person" within the meaning of the Civil Rights Act, and is not subject to a § 1983 suit.  *See Will*, 491 U.S. at 71. For these reasons, Defendants Pinckneyville Correctional Center and Illinois Department of Corrections shall be dismissed from this action with prejudice.

**Count 2** shall proceed at this time against Defendant Shah only.  All other Defendants shall be dismissed from this soy-food claim.

## Severance of Count 3 – Deliberate Indifference to Plaintiff's Eye Condition

Plaintiff asserts that the Unknown Defendant Eye Doctor "out of anger[,] intentionally gave Plaintiff (ear drops) which he opened himself and opened [Plaintiff's] eyes then placed (2)

drops into both eyes" (Doc. 1, p. 9). Prior to the Defendant's application of the drops, Plaintiff had tried to speak with the Defendant Eye Doctor about his treatment, but the Defendant told Plaintiff to "shut up." *Id*. Plaintiff also states that "he told [the] Eye Doctor that he'd file a grievance[;] that's when he gave Plaintiff the wrong medicine for his eyes." *Id*.

While Plaintiff's claim that the Unknown Defendant Eye Doctor intended to harm him tests the limits of plausibility, the Court must take Plaintiff's allegations of fact as true at this stage of the litigation. *See Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011). This claim for deliberate indifference to the risk of harm to Plaintiff's health from the intentional application of ear medicine to Plaintiff's eyes may proceed.[5]

Plaintiff's narrative also hints at a claim that the Defendant may have taken this action in retaliation when Plaintiff told him he would file a grievance; however, the sequence of events is not entirely clear from the complaint. Regardless, as noted above, the claim in **Count 3** against the Unknown Defendant Eye Doctor shall be severed from this action. A new case will be opened in which this claim may proceed. Plaintiff shall note that if he elects to go forward with this claim, it will be necessary for him to identify the Unknown Defendant Eye Doctor by name in order for service to be accomplished.

**<u>Pending Motions</u>**

A decision on Plaintiff's motion for leave to proceed in forma pauperis ("IFP") (Doc. 2) shall be issued in a separate order, following the receipt of Plaintiff's prison trust fund statement(s). Plaintiff is **REMINDED** that he must provide those documents no later than May

---

[5] The facts recited by Plaintiff also suggest that the Doctor's actions may have constituted malpractice or negligence; however, Plaintiff has not asserted this state law claim. Negligence, malpractice, and mistakes do not violate the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). If Plaintiff were to assert such a claim, it would be subject to dismissal because he has not submitted the affidavit and report of a medical professional that are required in any action seeking "damages for injuries or death by reason of medical, hospital, or other healing art malpractice." *See* 735 ILL. COMP. STAT. §5/2-622.

26, 2015; if they are not timely received, this action shall be subject to dismissal (*See* Doc. 8).

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) shall be **GRANTED IN PART AND DENIED IN PART.**  Service shall be ordered below on those Defendants who remain in the action.  No service shall be made on the dismissed Defendants.

**Disposition**

The Clerk is **DIRECTED** to add Defendant **SHAH** as a party to this action.

Defendants **CANTINA FOOD SERVICES** and **WEXFORD MEDICAL SOURCES** are **DISMISSED** from this action without prejudice.  Defendants **ILLINOIS DEPARTMENT of CORRECTIONS** and **PINCKNEYVILLE CORRECTIONAL CENTER** are **DISMISSED** from this action with prejudice.

**IT IS HEREBY ORDERED** that Plaintiff's deliberate indifference claim against the Unknown Defendant Eye Doctor (**COUNT 3**), which is unrelated to the dietary claims in Counts 1 and 2, is **SEVERED** into a new case.  That new case shall be: Claim(s) against the **UNKNOWN DEFENDANT EYE DOCTOR**.

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1)   This Memorandum and Order
(2)   The Original Complaint (Doc. 1)
(3)   Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened case, he must notify the Court in writing within 35 days (**on or before June 8, 2015**). Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he

will be responsible for an additional **$350.00 filing fee** in the new case.[6]  No service shall be

ordered on the Unknown Defendant Eye Doctor until after the deadline for Plaintiff's response.

Further, service cannot commence until Plaintiff identifies this Unknown Defendant by name in

a properly filed amended complaint in the severed action (if he chooses to proceed with it).

Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and

service address for this individual.

**IT IS FURTHER ORDERED** that the _**only claims remaining in this action are**_

_**COUNT 1 against Defendants Spiller, Bailey, and Bates, and COUNT 2 against Defendant**_

_**Shah**_, for deliberate indifference to Plaintiff's nutritional and medical needs.  This case shall

now be captioned as: **ARTHUR KIRBY, Plaintiff, vs. THOMAS A. SPILLER, SUZANN**

**BAILEY, TY BATES, and SHAH, Defendants.**

**IT IS FURTHER ORDERED** that the **UNKNOWN DEFENDANT EYE DOCTOR** is

**TERMINATED** from _this_ action with prejudice.

As to **COUNTS 1 and 2**, which remain in the instant case, the Clerk of Court shall

prepare for Defendants **SPILLER, BAILEY, BATES,** and **SHAH:**  (1) Form 5 (Notice of a

Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of

Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this

Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a

Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk

within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect

---

[6] The fee shall be $400.00 if Plaintiff does not qualify to proceed _in forma pauperis_, because he will then be required to pay the additional $50.00 civil filing fee that is waived only for plaintiffs granted pauper status.  _See_ Judical Conference Schedule of Fees - District Court Miscellaneous Fee Schedule, 28 U.S.C. § 1914, No. 14.

formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 2).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 4, 2015**

s/ STACI M. YANDLE
United States District Judge